RULEY, JUDGE:
These claimants have alleged various amounts of damage to *511 their homes situate on State Route 60/2, also known as Edge-wood Drive, near Huntington, West Virginia, as a result of various alleged acts of negligence by the respondent.
The parties agreed that the question of liability of the respondent is the same as to all of the claimants, but the amounts of damage, if any, are to be determined separately as to the respective claimants, and accordingly, the evidence upon the question of liability is made applicable to all of the claims.
In early 1980, each claimant noticed cracks in the foundation and walls of their homes. Prior to that time, the claimants had experienced no such defects. These cracks became progressively worse, eventually rendering the Woody and Pennington homes unfit for habitation, and severely damaging the Shoemaker home. Apparently, the cracks were caused by forces exerted on the homes by one large landslide and several smaller landslides in the area. The claimants allege that the damages to their homes are due to two factors: undrained ditch lines along Route 60/2, and traffic vibrations from the nearby 1-64 bridge. Thomas W. Olson, an Associate Professor of Engineering at Marshall University, testified that he examined the area on two separate occasions in the spring and summer of 1981. In his opinion, the ditch line along Route 60/2 did not drain properly, causing the soil to become saturated and thus more subject to motion and vibrations. He concluded that “saturation of the soil and the vibrations of traffic from the 1-64 bridge both contributed materially to the slide.” However, he did not measure the water content of the soil or the vibrations from the 1-64 bridge, and stated that “every hillside in Huntington is slideprone.”
Gary Adkins, an Assistant District Engineer for the respondent, testified that he visited the Edgewood Drive area in the spring of 1980, in response to telephone calls from the claimants. His inspection revealed a large landslide which began near the Pennington home and extended to the area of the Shoemaker home, running parallel to Route 60/2, a distance he estimated to be 300-500 feet. He also observed two areas of ponding along Route 60/2, and testified that drainage pipes were installed at that time to aid the drainage process. *512 The slide, however, was impossible to correct due to its size. He concluded that neither Route 60/2 nor the 1-64 bridge had any effect on the slide, stating that the road was simply a part of the movement rather than a contributing factor. In his opinion, both Route 60/2 and the claimants’ homes were being damaged by the same slide.
Dave Bevins, an Assistant Maintenance Engineer for the respondent, also observed the area in the spring of 1980 and agreed with the conclusions reached by Mr. Adkins. He added that there were many slides in the area, and that the probable cause was a combination of wet weather and unstable soil.
Gary Cooper, a Soils Engineer for the respondent, testified that he inspected the area in June or July of 1980 and again in September of 1982. He described the landslide in question as a “rotational failure through part of the upper side of Route 60/2 . . . about 800 to 900 feet long along the roadway and probably 300 feet between the break behind the houses on the upper side and where you can see it’s coming out below the houses.” In July of 1980 he tested for vibrations from the 1-64 bridge, using a seismograph, which is an instrument that measures vibrations in millimeters per second. Taking readings when heavy trucks and buses were crossing the bridge, the highest reading obtained was .06 mm/sec., which he testified was so low that it was “not even listed on the [F.H.A.] chart as being noticeable. They don’t even take the chart that low. Anything that low is just natural vibrations of the earth itself.” In addition, he measured the distance from the bridge to the claimants’ homes at 550 feet, and testified that the F.H.A. report on traffic vibrations stated that “the effect on anything over about 200 or 300 feet was negligible.” Mr. Cooper concluded that traffic vibrations had no effect on the slide, adding that the most likely cause was “. . . just nature. It’s actually an unstable area in the slope.”
James Amenta, a Soils Geologist for the respondent, testified that he examined the area during the spring or summer of 1980. He opined that the slide in question was an older slide which had recently become unstable, and that the traffic vibrations from the 1-64 bridge had no effect on the slide.
*513 Mary Flora, a Seismologist-Geologist for the respondent, made a seismograph study of traffic vibrations in the area in September-October, 1982 (the seismograph study by Mr. Cooper was done in July of 1980). Measurements were taken from three different sites: directly under the east abutment of the 1-64 bridge; on the approach side of the bridge; and 500 feet away, near the slide. The vibrations from 30-35 tractor trailers were recorded at each site. The highest readings obtained on the abutment and the approach sites were 1 mm/sec., while the highest reading at the site near the slide was .06 mm/sec. Ms. Flora testified that 1 mm/sec. was “far below the damage level”, which begins at 100 mm/sec., and that according to the 1979 FHWA Report, vibrations beyond 200 to 300 feet are not considered damaging. She concluded that the traffic vibrations from the 1-64 bridge would have no effect on the claimants’ property.
Considering the evidence and testimony presented at the hearing of these three cases, and the legal principles applicable thereto, the Court is of the opinion that there is not sufficient proof that acts or omissions of the respondent were the direct or proximate cause of the damages sustained by the claimants. Instead, the overwhelming burden of the evidence suggests that the claimants simply had the misfortune of owning homes in an extremely slide-prone area. The Court is not unmindful of the disaster which has befallen the claimants, but, for the foregoing reasons, we are obliged to deny these claims.
Claims disallowed.